1. VINCENT ROSENBALM
2. 2100 NAPA VALLEJO HIGHWAY
3. NAPA, CALIFORNIA 94558

FILED 7/21/08
JUL 24 2008
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

4. UNITED STATES DISTRICT COURT
5. NORTHERN DISTRICT OF CALIFORNIA
6. VINCENT ROSENBALM  3  HABEAS SUPPLEMENT
7.                    3
8. ED FOULK           3  CASE NO: C08-3436
9. THOMAS ALLMAN      3  SUPREME COURT OF CALIFORNIA
                         CASE NO: S163898
10.
11. TO RICHARD WIEKING,
12.    I HAVE INCLUDED THE FOLLOWING
13. SUPPLEMENTAL MATERIAL FOR MY
14. HABEAS CORPUS TO PROVE MISCONDUCT
15. BY JUDGE RICHARD HENDERSON OF
16. UKIAH, CALIFORNIA SUPERIOR COURT.
17. HIS RECORDS ALSO LIST MISCONDUCT
18. OF TWO DOCTORS WHO COMMITTED
19. PERJURY 1) DR. ROSOFF 2) DR. WILTSE
20. WHICH I HOPE TO SEND FURTHER PROOF.
21. I AM WRITING TO YOU CONCERNING JUDGE
22. HENDERSON REFUSING TO PUT CORRECT
23. DATES ON HIS PAPERWORK IN AN
24. ATTEMPT TO CONCEAL 60 DAYS SPEEDY
25. TRIAL. UNDER THE PENALTY OF PERJURY
26. THIS IS TRUE AND CORRECT TO THE BEST
27. OF MY KNOWLEDGE.
28.                        Vincent Rosenbalm

EXHIBIT A                              CORRECT DATE



1  WESLEY HAMILTON
   MENDOCINO COUNTY PUBLIC DEFENDER
2  By: Linda A. Thompson #118430
   Assistant Public Defender
3  199 South School Street
   Ukiah, CA  95482
4  (707) 463-5433

5  Attorneys for Defendant
   Vincent Rosenbalm
6

7

8          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  IN AND FOR THE COUNTY OF MENDOCINO

10

11 THE PEOPLE OF THE STATE       )   Case No.  MCUK CRCR 06-74005
   OF CALIFORNIA,                )
12                               )
              Plaintiff,         )
13                               )
   -vs-                          )   ORDER FOR COMMITMENT
14                               )   PURSUANT TO PENAL CODE
   VINCENT ROSENBALM,            )   SECTION 1370
15                               )
              Defendant.         )
16 _____)

17     WHEREAS, on November 27, 2006, the above-named defendant, VINCENT ROSENBALM,

18 being found incompetent to proceed in the above-entitled Court on a felony violation of penal code

19 section 422, [criminal threat, with a maximum commitment time of three years];

20     Upon the recommendations of Dr. Kevin Kelley, Ph.D., duly qualified psychologist, and Dr.

21 Douglas Rosoff, psychiatrist, that defendant is presently incompetent and unable to rationally assist in

22 his defense, and the placement report of Christopher Chapa, L.C.S.W. Community Program Director

23 that defendant should be housed at the State hospital pending restoration of competency, [pursuant to

24 penal code section1370]:

25     IT IS HEREBY ORDERED:

26     1. That Vincent Rosenbalm be committed to Napa State Hospital;

27     2. That the maximum commitment time for this defendant is three years;

28     //

*EXHIBIT B*

*INCORRECT DATES CIRCLED*

# Superior Court of California
## Mendocino County
### Ukiah Branch

**FILED**

JUN - 3 2008

CLERK OF MENDOCINO COUNTY
SUPERIOR COURT OF CALIFORNIA

VINCENT ROSENBALM,

    Petitioner,

vs

    Case No. SCUK CRCR ~~07-79388~~ 08-84434

NAPA STATE HOSPITAL
(Ed Foulk, Director),

    Respondent.

_____/

### Order Summarily Denying Petition for Writ of *Habeas Corpus*

On October 29, 2006, petitioner Rosenbalm was arraigned on a single count felony complaint, filed October 20, 2006, alleging a violation of PC 422, making a criminal threat. The public defender was immediately appointed and on that date declared a doubt as to petitioner's mental competence. (PC 1368(b)) Criminal proceedings were suspended. (PC 1368(c)) On November 27 the court reviewed the reports of doctors Kelly and Rosoff and determined that petitioner was mentally incompetent within the meaning of PC 1368. Following a PC 1370(a)(2) referral, petitioner was committed to Napa State Hospital on December 21, 2006.

### *Discussion*

Petitioner contends he was denied a speedy trial in that his preliminary hearing did not commence within ten court days from the date of arraignment on the felony complaint and that he should have been released from custody. Criminal proceedings, including the preliminary hearing, were automatically suspended by the October 29, 2006 declaration by Petitioner's attorney of the attorney's doubt as to petitioner's mental competence. (PC 1368(c)) Petitioner has not yet been found mentally competent and the criminal proceedings remain suspended.

THE FOREGOING INSTRUMENT IS A CORRECT COPY OF THE ORIGINAL ON FILE IN THIS OFFICE

DATED 6/3/08

ATTEST:
BENJAMIN D. STOUGH
CLERK/ADMINISTRATOR SUPERIOR COURT
COUNTY OF MENDOCINO, STATE OF CALIFORNIA
BY _____ DEPUTY COURT CLERK

1

*INCORRECT DATES CIRCLED*

**Superior Court of California**
**Mendocino County**
Ukiah Branch

ENDORSED-FILED
JUL 1 6 2008
CLERK OF MENDOCINO COUNTY
SUPERIOR COURT OF CALIFORNIA
*Stephen Kibou*

VINCENT ROSENBALM,

    Petitioner,

vs         Case No. SCUK CRCR 07-79388
               08-84489  BH

NAPA STATE HOSPITAL
(Ed Foulk, Director),

    Respondent.
_____/

### Order Summarily Denying Petition for Writ of *Habeas Corpus*

On *October 29, 2006*, petitioner Rosenbalm was arraigned on a single count felony complaint, filed October 20, 2006, alleging a violation of PC 422, making a criminal threat. The public defender was immediately appointed and on that date declared a doubt as to petitioner's mental competence. (PC 1368(b)) Criminal proceedings were suspended. (PC 1368(c)) On *November 27* the court reviewed the reports of doctors Kelly and Rosoff and determined that petitioner was not mentally competent within the meaning of PC 1368. Following a PC 1370(a)(2) referral, petitioner was committed to *Napa* State Hospital on December 21, 2006. On May 10, 2008, the court (Hon. Clayton L. Brennan) granted a petition for the involuntary administration of anti-pyschotic medication to petitioner Rosenbalm. (PC 1370(a)(2)(C))

Petitioner herein challenges the PC 1370(a)(2)(C) order, contending it was based on perjurous statements by Dr. Rosoff and Dr. Wiltse.

*PERJURY BY THESE TWO DOCTORS IS RESPONSIBLE FOR SOME OF THE ILLEGAL ACTIONS BY THE COURT. THE STATE MEDICAL BOARD IS INVESTIGATING.*

1

*VR*

EXHIBIT L - HENDERSON (MISCONDUCT)

1. EXHIBIT A - 12/26/06 COMMITMENT ORDER
2. FROM JUDGE BROWN IS CORRECT
3. 12/21/06 DATES WRITTEN BY JUDGE
4. HENDERSON IS INCORRECT?
5. MY ARREST WAS 10/19/06
6. ARRAIGNMENT WAS 10/23/06
7. 10/29/06 BY JUDGE HENDERSON (INCORRECT)
8. FURTHERMORE JUDGE CLAYTON SIGNED
9. AN ORDER TO INVOLUNTARILY MEDICATE
10. ME WITH NO HEARING, AND I WAS
11. COMMITTED 12/26/06 BY JUDGE
12. BROWN WITH NO HEARING, REFUSED
13. WITNESSES TO EXAMINE AND CROSS
14. EXAMINE PERJURY BY DOCTOR WILTSE
15. AND DR. ROSOFF IS REASON FOR ILLEGAL
16. COMMITMENT. I DID SEND IN MEDICAL
17. BOARD COMPLAINT.  60 DAYS NO PRELIMINARY PC 859b
18.     MY HOPE IS THIS COURT WILL
19. KEEP RECORDS OF THESE SUPPLE-
20. MENTAL ADDITIONS TO MY HABEAS
21. AND SEE THE PATTERN OF PERJURY
22. AND MISCONDUCT DEVELOPING.
23. SURELY I DESERVE RETRIBUTION.
24. I HAVE INCLUDED A LACK OF SCIENTIFIC
25. BASIS FOR ILLEGALLY MEDICATING ME.
26. THIS AMOUNTS TO POISON (PC 347)
27. Under the Penalty of Perjury this
28. is true and correct. Vincent Rosenbalm

*EXHIBIT E - MISCONDUCT BY JUDGE BRENNAN TO ILLEGALLY INVOLUNTARILY MEDICATE ME*

Psych Illnesses Lack Scientific Basis
SOCIETYWATCH: HEALTH
July 2007

In today's society, where every behavior needs an excuse—and a chemical fix—the distribution of psychiatric drugs has become a multi-billion-dollar industry. However, as "miracle" drugs have failed to remedy behavioral problems in society and side effects have become more pronounced, voices of dissent are growing more widespread. Now, a leading psychiatrist has, in effect, admitted that psychiatric diagnosis has no scientific basis—which means drugs prescribed for such diagnoses also have no scientific underpinning.

The Louisiana Weekly reported March 19: "With increasing international concern about the large number of children labeled with so-called psychiatric disorders and prescribed mind-altering drugs, even the pioneer of psychiatry's billing bible and 'godfather of adhd,' Dr. Robert Spitzer, recently admitted that normal children are being inappropriately labeled by health care professionals."

Spitzer was one of the main contributors to the latter editions of the Diagnostic and Statistical Manual of Mental Disorders (dsm) and personally defined more than a hundred mental disorders. In the rush to assign a name to a whole gamut of antisocial behaviors, however, it appears these "experts" overlooked a rather fundamental consideration. "What happened," Spitzer told bbc2, "is that we made estimates of the prevalence of mental disorders totally descriptively, without considering that many of these conditions might be normal reactions which are not really disorders. That's the problem, because we were not looking at the context in which those conditions developed" (emphasis ours).

"[P]sychiatric disorders are entirely subjective," the Louisiana Weekly reported. "[P]sychiatrists at the American Psychiatric Association literally vote on which 'disorders' to include in the dsm, and the disorders are removed if they are too much trouble" (op. cit.).

The diagnostic system that these psychiatrists created—without looking at the context in which various behavioral problems develop—has led to millions being diagnosed with a range of conditions such as Attention Deficit Hyperactivity Disorder and Oppositional Defiant Disorder. "[P]sychiatrists have been using the dsm to fraudulently claim that mental disorders are the same as physical disorders, thereby justifying the prescription of powerful, psychotropic drugs, including to very young children" (ibid.). Worldwide sales of drugs to treat "mental disorders," including stimulants, antipsychotics and antidepressants, now total more than $80 billion each year.

Spitzer maintained that psychiatric drugs "don't have serious side effects"—despite the fact that the Food and Drug Administration (fda) has reported that such side effects can include heart attack, stroke, suicidal and homicidal behavior, diabetes, psychosis and sudden death. A study published by a doctor last September in the Public Library of Science Medicine journal concluded that antidepressants increase the risk of violence in both children and adults. The manufacturer of one antipsychotic drug has agreed to a $1.2 billion settlement involving more than 25,000 individuals who claim the drug caused diabetes and other side effects.
///

1. PROOF OF SERVICE   7/21/08
2. I am Vincent Rosenbalm, an
3. American Citizen over 18 years
4. of age.
5.    CASE NO: CV08-3436 SI
6. On 7/21/08 I served the within
7.    1) EXHIBIT A-E
8.    2) CAPTION
9. By placing a copy in the
10. Napa State Hospital Mail
11. Addressed: COURT CLERK
12.    U.S. DISTRICT COURT
13.    450 GOLDEN GATE AVE
14.    SAN FRANCISCO, CA 94102
15. From
16.    Vincent Rosenbalm
17.    2100 Napa Vallejo Highway
18.    Napa, CA 94558
19.
20. Under the Penalty of Perjury
21. this is true and correct
22. to the best of my knowledge.
23.
24.       Vincent Rosenbalm

RECEIVED JUL 24 2008 RICHARD W. WIEKING CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA



Vincent Rosenblum
2100 Napa Vallejo Highway
Napa, CA 94558

LEGAL MAIL

Court Clerk
U.S. District Court
450 Golden Gate Ave
San Francisco, CA 94102